**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA, acting through the United States Department of Agriculture (Farm Service Agency),** | **CIVIL NO. 18-1802 (DRD)** |
| *Plaintiff,* | |
| v. | |
| **JUAN ANTONIO ALBELO MIRANDA a/k/a JUAN A. ALBELO MIRANDA a/k/a JUAN A. ALBELO MIRANDA, MARGARITA MATOS BAUZA and their conjugal partnership,** | |
| *Defendants.* | |

**OPINION AND ORDER**

Pending before the Court is United States of America's *Motion for Summary Judgment* (Docket No. 15) whereby the Plaintiff argues being entitled to judicial collection as the Defendants have failed to comply with the terms and conditions set forth in three (3) separate loan agreements between the parties. The Defendants submitted their respective opposition thereto. *See* Docket Nos. 18 and 19. The United States of America then replied. *See* Docket No. 22. For the reasons stated herein, United States of America's *Motion for Summary Judgment* (Docket No. 15) is hereby **GRANTED.**

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

On October 25, 2018, the United States of America acting through the United States Department of Agriculture (Farm Service Agency) (hereinafter, "Farm Service Agency") filed the instant foreclosure action against Defendants Juan Antonio Albelo Miranda a/k/a Juan A. Albelo

Miranda a/k/a Juan A. Albelo Miranda, Margarita Matos Bauza and their conjugal partnership. *See* Docket No. 1. The Farm Service Agency is the owner and holder of the following three (3) Promissory Notes: (1) a promissory note for the amount of $51,780.00 with an annual interest of 10% dated on June 26, 1980 (Docket No. 1, **Exhibits 1 and 2**); (2) a promissory note for the amount of $34,370.00 with an annual interest of 11%, dated on June 26, 1980 (*Id.* **Exhibits 9 and 10**); and (3) a promissory note for the amount of $13,500.00 with an annual interest of 5%, dates on June 26, 1980 (*Id.* Exhibits 13 and 14). For the purpose of securing payment of the three (3) promissory notes, voluntary mortgages were executed on that same date. *See Id.* **Exhibits 3-8**, 11-16.

Moreover, "[i]t was expressly stipulated in the notes evidencing the indebtedness that default in payment of any part of the covenant or agreement therein contained will authorize the Farm Service Agency, and/or USDA, as payee of said notes, to declare due and payable the total amount of the indebtedness evidenced by said notes and proceed with the execution and/or foreclosure of the mortgages." Docket No. 1 at ¶ 10. According to Plaintiff, the Defendants have failed to comply with the terms of the mortgage contracts "by failing to pay the installments due on all notes until the present day", thus, all the indebtedness of the defendants have been declared due and payable. *Id.* at ¶ 11.

The Defendants have admitted all the elements in the *Complaint*, except as to whether a statute of limitations as to the unpaid accrued interest limits Plaintiff's collection efforts to five (5) years of unpaid interest. *See* Docket No. 19. Thus, proper analysis of the parties' motions require careful scrutiny of the underlying legal framework.

## II.    UNCONTESTED FACTS

The following factual findings are taken from Plaintiff's statement of undisputed facts, the Defendants' admission of most of the facts, and supported documentation. *See* Docket No. 15-1 and Docket No. 18. Upon careful review of the record, the Court finds the following facts are undisputed:

1.      Plaintiff, USDA, through the Farm Service Agency, an agency of the United States of America organized and existing under the provisions of the Consolidated Farm and Farm Service Agency Act, 7 U.S.C. §1921 et seq., is the owner and holder of three (3) Promissory Notes subscribed by Juan Antonio Albelo Miranda, his wife Margarita Matos Bauzá, and their conjugal partnership ("defendants"), that affect the four (4) properties described below. *See Promissory Note* for the amount of $51,780.00 at Docket No. 15, **Exhibits 1 and 2***; Promissory Note* for the amount of $34,370.00 *Id.* at **Exhibits 9 and 10**; and *Promissory Note* for the amount of $13,500.00, *Id.* at **Exhibits 13**; *Id.* at **and 14**.

2.      The first promissory note is for the amount of **$51,780.00,** with annual interest of 10%, dated on June 26, 1980. *See Id.* at **Exhibits 1 and 2**.

3.      For the purpose of securing the payment of said promissory note, a voluntary mortgage was executed on the same date, in favor of the plaintiff, under the terms and conditions stipulated and agreed therein, through Deed No. 78. This mortgage is duly recorded at the corresponding Property Registries. *See Voluntary Mortgage No. 78* at **Exhibits 3 and 4**; *Title Search* for property no. 5,332 of Ciales at **Exhibit 5**; *Title Search* for property no. 5,359 of Ciales at **Exhibit 6**; *Title Search* from property no. 5,847 of Toa Baja *Id.* at **Exhibit 7**; and *Title Search* from property no. 5,299 of Ciales, *Id.* at **Exhibit 8**.

4. Plaintiff is the owner also of a promissory note for the amount of **$34,370.00,** with annual interest of 11%, dated on June 26, 1980. *See Id.* at **Exhibits 9 and 10**.

5. For the purpose of securing the payment of said promissory note, a voluntary mortgage was executed on the same date, and conditions stipulated and agreed therein, through Deed No. 79. *See Voluntary Mortgage No. 79 Id.* at **Exhibits 11 and 12**. This mortgage is duly recorded at the corresponding Property Registries. *See Title Searches*, *Id.* at **Exhibits 5, 6, 7, and 8**.

6. Finally, plaintiff owns and holds a promissory note for the amount of **$13,500.00** with annual interest of 5%, dated on June 26, 1980. *See Id.* at **Exhibits 13 and 14**.

7. For the purpose of securing the payment of said promissory note, a voluntary mortgage was executed on the same date, in favor of the plaintiff, under the terms and conditions stipulated and agreed therein, through Deed No. 80. *See* Voluntary Mortgage No. 80, *Id.* at **Exhibits 15 and 16.**

8. According to the Property Registry of Puerto Rico, the defendants herein appear as owners of record of the real estate properties subject of this case. Said properties are described -as they were recorded in Spanish- as follows:

A. RUSTICA: Radicada en el barrio Pesas del término municipal de Ciales, compuesto de 17.00 cuerdas, equivalentes a 6 hectáreas, 66 áreas y 17 centiáreas, y en lindes por el NORTE, con la parcela número dos, antes, hoy José Márquez; por el SUR, Salvador Villanueva; por el ESTE, con el camino vecinal; y por el OESTE, con Rafael Hernández, antes, hoy Francisco Fullana. De esta finca se han segregado solares de: 1.00 cuerda; 774.6587 m/c; 877.5001 m/c; 1,326.2573 m/c; 660.00 m/c; 710.00 m/c, sin que se haya descrito su remanente.

PROPERTY NO. 5,332, recorded at page 81 of volume 104 of Ciales. Property Registry of Manatí, Puerto Rico.

*See Title Search*, Docket No. 15, **Exhibit 5**.

    B.    RUSTICA: Situada en el barrio Frontón, sitio denominado de la Altura, término municipal de Ciales, compuesta de cinco cuerdas, equivalentes a una hectárea, noventa y seis áreas y cincuenta y una centiárea de terreno, conteniendo una casa vivienda de madera techada de zinc, y un rancho para máquina de despulpar café y en lindes al NORTE, con Eugenio Colón Díaz; al SUR, con Juan Villalobos; al ESTE, con Josefina del Río Villalobos; y al OESTE, con Antonio Ortiz García.

           PROPERTY NO. 5,359, recorded at page 233 of volume 105 of Ciales. Property Registry of Manatí, Puerto Rico.

*See Title Search*, *Id.*, **Exhibit 6**.

    C.    URBANA: Solar número tres mil ciento ochenta del bloque E de Levittown, barrio Sabana Seca de Toa Baja, con un área de quinientos setenta y tres metros cuadrados con cincuenta y seis centímetros cuadrados. En lindes por el NORTE, en dieciocho metros treinta centímetros, y diez metros setenta y cinco centímetros con el Paseo Cresta, con la calle número cuatrocientos uno según plano y el solar número tres mil ciento setenta y nueve, por el SUR, en veinticinco metros cincuenta y tres centímetros y un arco de los dos metros setenta y cinco centímetros con la calle Centurión, calle número cuatrocientos nueve, según plano; por el ESTE, en diecinueve metros setenta y cinco centímetros y un arco de dos metros setenta y cinco centímetros con la avenida del Valle, calle número setenta y nueve, según plano; y por el OESTE, en trece metros ochenta y cinco centímetros y nueve metros cincuenta centímetros con el Paseo Cresta, calle número cuatrocientos uno, según plano y el solar número tres mil ciento cincuenta y dos.

           PROPERTY No. 5,847, recorded at page 141 of volume 83 of Toa Baja, Property Registry of Toa Baja, Puerto Rico, section II.

*See Title Search, Id.* **Exhibit 7.**

    D.    RUSTICA: Situada en el barrio Frontón, sitio de la Altura, término de Ciales, compuesta de cinco cuerdas y una casa, equivalentes a una hectárea, noventa y seis áreas y cincuentidos centiáreas de terreno. Colindante al NORTE, con María y Josefina Villalobos; por el SUR; con Juan Robles; por el ESTE, Sucesión Nicodemus Villalobos, hoy Manuel y Simón Villalobos; y al OESTE, la misma Sucesión.

PROPERTY NO. 5,599, recorded at page 110 of volume 102 of Ciales. Property Registry of Manatí, Puerto Rico.

*See Title Search, Id.* **Exhibit 8.**

9.      It was expressly stipulated in the notes evidencing the indebtedness that default in the payment of any part of the covenant or agreement therein contained will authorize the Farm Service Agency, and/or the USDA, as payee of said notes, to declare due and payable the total amount of the indebtedness evidenced by said notes and proceed with the execution and/or foreclosure of the mortgages. *See* Docket No. 15, **Exhibit 1**, page 2; **Exhibit 9**, page 2; and **Exhibit 13**, page 2.

10.      Defendants have failed to comply with the terms of the notes and mortgage contracts by failing to pay the installments due on all notes until the present day. *See Certification Under Penalty of Perjury by Liha Sánchez, Loan Program Support Specialist of the Farm Service Agency, Id.*, **Exhibit 17.** After declaring all the indebtedness of defendants due and payable, defendants owe to the USDA, the following amounts as of August 29, 2019:

A.      On the $51,780.00 Note: the sum of $51,780.00, of principal;
B.      On the $34,370.00 Note: the sum of $34,370.00, of principal; and
C.      On the $13,500.00 Note: the sum of $13,500.00, of principal.

*See Id.*

11.      Defendants are not presently active in the military service for the United States. *See SRCA Reports*, Docket No. 15, **Exhibit 18.**

12.      The promissory notes that are object of this case pertain to loans extended by plaintiff to defendants that were primarily for business, commercial and/or agricultural purposes. *See* Docket No. 15, **Exhibit 3**, ¶ 13; **Exhibit 4**, ¶ 13; **Exhibit 11**, ¶ 13; **Exhibit 12**, ¶ 13, **Exhibit 15**, ¶ 13 and **Exhibit 16**, ¶ 13.

13.     As stated in the notes, the interests on the principal amount owed by defendants continue to accrue until the debt is paid in full. *See* the *Notes*, Docket No. 15, **Exhibits 1, 9 and 13**. Furthermore, under the mortgage deeds securing the debts owed by the defendants, the mortgage liens shall be in full effect until the amounts specified in the mortgage deeds have been paid off in their entirety. *See Mortgage Deeds*, Docket No. 15, **Exhibits 3, 11 and 15**. Moreover, in the event of foreclosure, the mortgaged properties shall answer for the payment of the principal and the interests accrued before and after the due date until the debt has been totally paid off, and for any loss suffered by the mortgage creditor as insurer for the promissory note, taxes, insurance premiums, or any other outlay or advance payment on the part of the mortgage creditor. *Id*. Accordingly, in addition to the principal amounts owed by plaintiff (see above), defendants owe to the USDA the following amounts, as evidenced in the *Certification of Indebtedness Under Penalty of Perjury*, *Id.*, **Exhibit 17**:

(A)     On the $51,780.00 Note:
(i)      The sum of $190,957.89, of interest accrued as of August 29, 2019, and thereafter until its full and total payment, which interest amount increases at the daily rate of $14.1863;
(ii)     Plus, insurance premium, taxes, advances, late charges, costs, court costs expenses, disbursements and attorney's fees guaranteed under the mortgage obligation.

(B)     On the $34,370.00 Note:
(i)      The sum of $141,866.22, of interest accrued as of August 29, 2019, and thereafter until its full and total payment, which interest amount increases at the daily rate of $10.3581;
(ii)     Plus, insurance premium, taxes, advances, late charges, costs, court costs expenses, disbursements and attorney's fees guaranteed under the mortgage obligation.

(C)     On the $13,500.00 Note:
(i)      The sum of $7,158.07, of interest accrued as of August 29, 2019, and thereafter until its full and total payment, which interest amount increases at the daily rate of $1.8493;

(ii)     Plus, insurance premium, taxes, advances, late charges, costs, court costs expenses, disbursements and attorney's fees guaranteed under the mortgage obligation.[1]

14.     The defendants owe the USDA, jointly and severally, the aforementioned amounts, and have refused to pay said indebtedness in spite of plaintiff's demands and collection efforts. *See* Notes at Docket No. 15, **Exhibits 1, 2, 9, 10, 13, 14***,* and acceleration letter*, Id.*, **Exhibit 21**.

15.     On September 14, 2017, more than a year prior to plaintiff's filing of the instant Complaint[2], plaintiff made a settlement offer to the defendants. *See* Docket No. 15, **Exhibit 22**. The defendants did not respond to plaintiff's offer, notwithstanding multiple follow-up efforts on plaintiff's part.

### III.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986).  Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law."  *Veda-Rodriguez v. Puerto Rico*, 110 F.3d 174, 179 (1st Cir. 1997).  A fact is "material" where it has the potential to change the outcome of the suit under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477

---

[1] *See* Analysis at 11-13 for further detail as to the Court's determination that the matter is deemed uncontested.
[2] The instant Complaint was filed on October 25, 2018. *See* Docket No. 1.

U.S. 242, 248 (1986).  A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence.  *Id.*  Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  *Id.*

After the moving party meets the required burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes-Irizarry v. Corporación Insular*, 11 F.3d 184, 187 (1st Cir. 1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor.  Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959-60 (1st Cir. 1997).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150 (2000)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106 S.Ct. 2505 (1986)).  Summary judgment is inappropriate where there are issues of motive and intent as related to material facts.  *See Poller v. Columbia Broad. Sys.*, 369 U.S. 470, 473, 82 S.Ct. 486 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman-Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781 (1982)("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez-Cruz v. Suttle Caribe*, Inc., 202 F.3d 424, 433 (1st Cir. 2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury").  "As we have said many times, summary judgment is not a

substitute for the trial of disputed factual issues." *Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 178-179 (1st Cir. 2011)(internal quotations and citations omitted).   Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 85 F.3d 86, 95 (1st Cir. 1996).  However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw unreasonable inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010)(internal quotations and citation omitted).  Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas De P.R. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)(internal citations omitted).

IV.      <b>ANALYSIS</b>

Under Puerto Rico law, a contract is perfected by the concurrence of three elements: (1) the consent of the contracting parties; (2) a definitive object subject of the contract; and (3) a cause for the obligations that each party is assuming. 31 P.R. Laws Ann. § 3391. There is consent when a concurrence of "[t]he offer and acceptance of the thing and the cause which are to constitute the contract" occurs. 31 P.R. Laws Ann. § 3401. "Obligations arising from contracts have legal force between the contracting parties and must be fulfilled in accordance with their stipulations." *Id.* at § 2994.  As such, if "a party fails to uphold or abide by the contract's essential obligations, such failure will be deemed a breach of the contract." *Markel Am. Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 31 (1st Cir. 2012).

A mortgage is defined as "a guarantee of a debt, which in turn is secured by a particular property." *Chicago Title Ins. Co. v. Sotomayor*, 394 F.Supp.2d 452, 460 (D.P.R. 2005)(*citing Torres v. Fernandez*, 47 D.P.R. 845, 848 (1934)). Hence, the mortgage is the collateral which provides, should there be a non-compliance, the remedy of a mortgage foreclosure suit to collect from the very property that secured the debt. 31 P.R. Laws Ann. § 2551; *Fed. Deposit Ins. Corp. v. Urbanizadora Altomar, Inc.*, 716 F. Supp. 701, 705 (D.P.R. 1989). Loan agreements are contracts that "have legal force between the contracting parties and must be fulfilled in accordance with their stipulations." *DLJ Mortg. Capital, Inc. v. Nevárez–Hernández*, No. 15–2889, 2017 WL 663532 *2, (D.P.R. Feb. 17, 2017). Following default on a loan secured by property, the "mortgage creditor may seek foreclosure." *ACM Penfield CFL, LLC v. Jolley–Talley*, No. 13–1729, 2011 WL 12464801 *3, 2014 U.S. LEXIS 117502 *7 (D.P.R. Aug. 20, 2011).

**A.      *Statute of Limitations of Unpaid Accrued Interests***

The Defendants raise only one objection to Plaintiff's request for summary judgment. According to the Defendants, "plaintiff could only collect five years of interest accrued" pursuant to the Puerto Rico Mortgage Law. Docket No. 19, ¶ 2. To wit, Article 166 of the Puerto Rico Mortgage Law provides that,

> Unless there is an agreement to the contrary, a mortgage granted on an interest-drawing loan shall only secure, with prejudice to a third party, in addition to the principal, interest for the last two years that have elapsed and the part due from the current annual payment.
>
> No stipulation may be made in any case that the mortgage secures the interest for more than five years. When a lump sum is established in the deed for interest payments, it may not exceed the amount corresponding to five annual interest payments.[3]

---

[3] The current version of said statutory provision holds that "unless there is an agreement to the contrary, a mortgage granted on an interest-drawing loan shall only secure, with prejudice to a third party, in addition to the principal,

PR ST T. 30 § 2562. Further, Section 155.1 of the General Regulations for the Implementation of the Mortgage Law and the Land Registry, No. 2674 of July 9, 1980, as amended, provides that "[t]he amount of interest insured shall be agreed with reference to the amount of interest insured with reference to the amount of interest insured with reference to the interest in force within a period not exceeding 5 years." Hence, the Defendants essentially argue that,

> From the foregoing we note that the legislature established treatment other than capital and interest, rejecting the possibility for the parties to stipulate that the mortgage insure interest for more than five years. This means that the mortgaged good will in no case be liable for interest in excess of those accrued for five years.

Docket No. 19 at 3-4.

Whereas, Plaintiff argues that "the parties stipulated in the notes and mortgage deeds object of this case that the interests on the principal amount owed by defendants continue to accrue until the debt is paid in full." Docket No. 15-2 at 13-4. More importantly, according to Plaintiff, "Article 166's provision invoked by defendants to argue that accrued interests past five years are time barred is inapplicable here in light of the contractual obligations contained in the notes and mortgage deeds." Docket No. 22 at 3. The Court agrees and briefly explains.

Pursuant to Puerto Rico law, "[o]bligations are created by law, by contracts, and by illicit acts and omissions or by those in which any kind of fault or negligence occurs." 31 P.R. Laws Ann. § 2992. "Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." 31 P.R. Laws Ann. § 2994. After all, the

---

interest for the last two years that have elapsed and the part due from the current annual payment. No stipulation may be made in any case that the mortgage secures the interest for more than five years. When a lump sum is established in the deed for interest payments, it may not exceed the amount corresponding to five annual interest payments. The interests shall be deemed secured by the mortgage only when the stipulation to that effect and the interests amount arises from the mortgage deed." Laws of P.R. Ann. tit. 30, § 6093.

law of obligations and contracts provides that "the doctrine of *pacta sunt servanda* generally holds parties to strict compliance with the terms of their bargain." *William L. Bonnell Co. v. Gandara* 714 F.Supp. 2d 272 (D.P.R. 2010). More importantly, "[t]he contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order." 31 P.R. Laws Ann. § 3372.

It is long standing precedent that parties in agreements secured by mortgages can stipulate the accrual of interests "not only until the debt is due and payable, but also until said debt is fully paid off without time limitations and irrespective of the statutory provision in question." Docket No. 15-2 at 14; *see Piovanetti v. Vivaldi,* 80 D.P.R. 108, 113-114 (1957); *Rodríguez Hermanos & Co. v. Aboy,* 66 D.P.R. 525 (1946); *Torres Maldonado v. Fernández*, 65 D.P.R. 622 (1946); and *Figueroa Rodríguez v. Ramírez*, 36 D.P.R. 917 (1927). The Puerto Rico Supreme Court has consistently held that,

> [o]f course, the loan contract may provide that not only shall interest be paid during the contractual term of the debt but also after maturity date. For example: upon stipulating the rate of annual interest on the principal of the loan, the contracting parties may expressly provide in the mortgage deed that the sum loaned shall accrue interest *"until its total reimbursement" (Figueroa Rodriguez* v. *Ramirez,* 36 P.R.R. 826) or *"until the indebtedness is fully settled" (Torres* v. *Fernández,* 65 P.R.R. 584) or *"until full payment" (F. Rodriguez Hnos. & Co.* v. *Ahoy,* 66 P.R.R. 498).* In all those cases we held that the creditor may recover in a summary foreclosure proceeding *all* interest due and unpaid up to the total liquidation of the principal debt where there is no third party whose interests might be prejudiced.

*Piovanetti v. Vivaldi,* 80 D.P.R. 108, 113-114 (1957). Therefore, it would be unreasonable for the Court to determine that the defendants are not bound under the terms of the notes and mortgages deeds that they agreed upon which entail the payment of accrued interests on the

debts until such debts are paid in full. More importantly, the defendants admit they are in default, and must comply with all covenants in the notes and mortgage deeds, accordingly.

In the case at bar, the undisputed material facts demonstrate that Plaintiff has three (3) valid and enforceable mortgage credits against the Defendants. Further, as the Defendants have failed to comply with the payments of the collateral obligations entered, summary judgment is warranted. The Debtors, Juan Antonio Albelo Miranda a/k/a Juan A. Albelo Miranda a/k/a Juan A. Albelo Miranda, Margarita Matos Bauza and their conjugal partnership, are parties to the Mortgage Notes previously described for the amounts of $51,780.00; $34,370.00 and $13,500.00 in which the mortgage creditor is the United States of America, acting through the Farmer's Home Administration. *See* Docket No. 15, **Exhibits 3, 11 and 15.**

To ensure payment in case of indebtedness by Mortgage Notes, the Debtors executed Mortgage as to the three (3) promissory notes. All Mortgage Deeds encumber the following properties:

A.      RUSTICA: Radicada en el barrio Pesas del término municipal de Ciales, compuesto de 17.00 cuerdas, equivalentes a 6 hectáreas, 66 áreas y 17 centiáreas, y en lindes por el NORTE, con la parcela número dos, antes, hoy José Márquez; por el SUR, Salvador Villanueva; por el ESTE, con el camino vecinal; y por el OESTE, con Rafael Hernández, antes, hoy Francisco Fullana. De esta finca se han segregado solares de: 1.00 cuerda; 774.6587 m/c; 877.5001 m/c; 1,326.2573 m/c; 660.00 m/c; 710.00 m/c, sin que se haya descrito su remanente.

PROPERTY NO. 5,332, recorded at page 81 of volume 104 of Ciales. Property Registry of Manatí, Puerto Rico.

*See Title Search*, Docket No. 15, **Exhibit 5.**

B.      RUSTICA: Situada en el barrio Frontón, sitio denominado de la Altura, término municipal de Ciales, compuesta de cinco cuerdas, equivalentes a una hectárea, noventa y seis áreas y cincuenta y una centiárea de terreno, conteniendo una casa vivienda de madera techada de zinc, y un rancho

para máquina de despulpar café y en lindes al NORTE, con Eugenio Colón Díaz; al SUR, con Juan Villalobos; al ESTE, con Josefina del Río Villalobos; y al OESTE, con Antonio Ortiz García.

PROPERTY NO. 5,359, recorded at page 233 of volume 105 of Ciales. Property Registry of Manatí, Puerto Rico.

*See Title Search*, *Id.*, **Exhibit 6**.

C.      URBANA: Solar número tres mil ciento ochenta del bloque E de Levittown, barrio Sabana Seca de Toa Baja, con un área de quinientos setenta y tres metros cuadrados con cincuenta y seis centímetros cuadrados. En lindes por el NORTE, en dieciocho metros treinta centímetros, y diez metros setenta y cinco centímetros con el Paseo Cresta, con la calle número cuatrocientos uno según plano y el solar número tres mil ciento setenta y nueve, por el SUR, en veinticinco metros cincuenta y tres centímetros y un arco de los dos metros setenta y cinco centímetros con la calle Centurión, calle número cuatrocientos nueve, según plano; por el ESTE, en diecinueve metros setenta y cinco centímetros y un arco de dos metros setenta y cinco centímetros con la avenida del Valle, calle número setenta y nueve, según plano; y por el OESTE, en trece metros ochenta y cinco centímetros y nueve metros cincuenta centímetros con el Paseo Cresta, calle número cuatrocientos uno, según plano y el solar número tres mil ciento cincuenta y dos.

PROPERTY No. 5,847, recorded at page 141 of volume 83 of Toa Baja, Property Registry of Toa Baja, Puerto Rico, section II.

*See Title Search, Id.* **Exhibit 7.**

D.      RUSTICA: Situada en el barrio Frontón, sitio de la Altura, término de Ciales, compuesta de cinco cuerdas y una casa, equivalentes a una hectárea, noventa y seis áreas y cincuentidos centiáreas de terreno. Colindante al NORTE, con María y Josefina Villalobos; por el SUR; con Juan Robles; por el ESTE, Sucesión Nicodemus Villalobos, hoy Manuel y Simón Villalobos; y al OESTE, la misma Sucesión.

PROPERTY NO. 5,599, recorded at page 110 of volume 102 of Ciales. Property Registry of Manatí, Puerto Rico.

*See Title Search, Id.* **Exhibit 8.**

The Plaintiff is the owner and holder of Mortgage Notes 78, 79 and 80. *See* Docket No. 15, **Exhibits 3, 11 and 15**. The Plaintiff provided photocopies of the original notes which do not have cancellation notices, in support of the instant motion for summary judgment. Moreover, a *Certifications of Indebtedness* under penalty of perjury were also submitted by Plaintiff as to each of the loans, wherein the debtors' indebtedness was certified as of August 29, 2019. *See* Docket No. 15, **Exhibit 17**. From the Certifications of Indebtedness, arises the fact that Defendants, Juan Antonio Albelo Miranda a/k/a Juan A. Albelo Miranda a/k/a Juan A. Albelo Miranda, Margarita Matos Bauza and their conjugal partnership, have breached their obligation payments on the above referenced notes, and have been, accordingly, in default since July 11, 1983.

Therefore, after declaring all the indebtedness of defendants due and payable, the Defendants owe to the USDA, the following amounts as of August 29, 2019: (1) on the $51,780.00 note, the sum of $51,780.00 of the principal with annual interest of 10%, that is, $190,957.89 of interest accrued as of August 29, 2019 and thereafter until its full and total payment, which interest amount increases at the daily rate of $14.1863; (2) on the $34,370.00 note, the sum of $34,370.00 of the principal with annual interest of 11%, that is, $141,866.22 of interest accrued as of August 29, 2019, and thereafter until its full and total payment, which interest amount increases at the daily rate of $10.3581; and (3) on the $13,500.00 note, the sum of $13,500.00 of the principal with annual interest of 5%, that is, $7,158.07 of interest accrued as of August 29, 2019, and thereafter until its full and final payment, which interest amount increases at the daily rate of $1.8493. Additionally, the Defendants owe insurance premium, taxes, advances, late charges, costs, court costs expenses, disbursements and attorney's fees guaranteed under the mortgage obligations. *See supra, Uncontested Facts* 10 and 13 at pp. 6-7. Pursuant to the terms

and conditions of the Mortgage Notes and Mortgage Deeds, Plaintiff has the right to, and has effectively declared the notes due and payable.

Thus, it is an undisputed fact that the Defendants failed to comply with the terms and conditions of the mortgage loan contract. The Notes allow the lender to require immediate payment of full amount and interests upon default. The Note and Mortgage entitle Plaintiff to the collection of costs and expenses to enforce the note, fixed at 10 percent of the original principal amount. There is no genuine issue of material fact as to the liability and Plaintiff's right to seek judicial enforcement of payment on the outstanding debt. Accordingly, Plaintiff is entitled to judgment as a matter of law providing for the foreclosure of the mortgage property described above.

## V.     CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's *Motion for Summary Judgment* (Docket No. 15). Judgment pursuant to the instant Opinion and Order is to be issued forthwith.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of November, 2020.


                                        *S/Daniel R. Domínguez*
                                        Daniel R. Domínguez
                                        United States District Judge